UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph Daryll Rued, W.O.R., Scott Daryll Rued, and Leah Jean Rued,<br><br>            Plaintiffs,<br><br>v.<br><br>Natalie E. Hudson, Leonardo Castro, Carrie Lennon, Keith Ellison, Alec Sloan, Beth Barbosa, Charlie Alden, Gilbert Alden Barbosa PLLC, Catrina M. Rued, Hennepin County Clerk of Court, Jamie Pearson, and CornerHouse,<br><br>            Defendants. | Case No. 24-cv-3409 (JRT/TNL)<br><br>**ORDER AND<br>REPORT AND RECOMMENDATION** |

Joseph Daryll Rued, W.O.R., Scott Daryll Rued, and Leah Jean Rued, *pro se* Plaintiffs.

Joseph D. Weiner, Minnesota Attorney General's Office, 445 Minnesota St., Suite 1100, St. Paul, MN 55101, for Defendants Natalie E. Hudson, Leonardo Castro, Carrie Lennon, Keith Ellison, and Alec Sloan

Beth Barbosa and Charlie R. Alden, Gilbert Alden Barbosa PLLC, 3800 American Blvd. West, Suite 1500, Edina, MN 55431, for Defendants Beth Barbosa, Charlie Alden, Gilbert Alden Barbosa PLLC, and Catrina M. Rued.

Ashley Marie Ramstad and Susan M. Tindal, Iverson Reuters, 9321 Ensign Ave. S., Bloomington, MN 55438, for Defendant Jamie Pearson.

Shannon L. Bjorklund, Dorsey & Whitney LLP, 50 S. 6th St., Suite 1500, Minneapolis, MN 55402, for Defendant CornerHouse.

      This matter comes before the Court on the following filings:

      1.      Plaintiffs' Complaint for a Civil Case [ECF No. 1 ("Complaint")];

2. the Motion to Dismiss Plaintiffs' Complaint and Seek Filing Restrictions filed by Defendants Natalie E. Hudson, Leonardo Castro, Carrie Lennon, Keith Ellison, and Alec Sloan [ECF No. 10];

3. Plaintiffs' Motion for Reassignment of Related Cases Pursuant to this Court's July 19, 2021 Standing Order to the Judicial Officers Earlier Assigned [ECF No. 17 ("Reassignment Motion")];

4. Defendant CornerHouse's Motion to Dismiss [ECF No. 25];

5. Plaintiffs' Responsive Motion to Deny Persons That Are Also Minnesota State Judicial and Attorney General Officers' Motion to Dismiss [ECF No. 32];

6. Plaintiffs' Responsive Motion to Deny CornerHouse's Motion to Dismiss [ECF No. 39];

7. the motion to dismiss filed by Defendants Catrina M. Rued, Beth Barbosa, Charlie R. Alden, and Gilbert Alden Barbosa PLLC [ECF No. 46];

8. Plaintiffs' Amended FRCP 11 Motion for Sanctions Against Dorsey & Whitney and Order for Such Firm to Immediately Withdraw from These Cases [ECF No. 51];

9. Plaintiffs' Motion to Disqualify Dorsey & Whitney's Representation of CornerHouse [ECF No. 53];

10. Defendant Jamie Pearson's Motion to Dismiss [ECF No. 69];

11. Pearson's Motion for Sanctions [ECF No. 75];

12. Plaintiffs' Responsive Motion to Deny Beth Barbosa, Catrina Rued, Charlie Alden, and Gilbert Alden Barbosa PLLC's Motion to Dismiss Plaintiffs' Relevant Claims [ECF No. 81]; and

13. Plaintiffs' Motion to Consolidate Related Cases [ECF No. 88];

For the following reasons, the Court denies the Reassignment Motion as moot, recommends dismissing this action without prejudice for lack of jurisdiction, and recommends denying most of the remaining motions as moot.

## I. BACKGROUND

This is the fourth of five cases that Plaintiff Joseph Rued has filed in this District based on his strong disagreement with the outcome of state-court custody proceedings involving his son, W.O.R.[1] In four of these cases, Scott Daryll Rued and Leah Jean Rued—Joseph's parents and W.O.R.'s paternal grandparents—have also served as plaintiffs.[2] This Court recently issued a Report and Recommendation in another of these cases, summarizing key points from the earlier state-court proceedings and the first of the Rueds' federal cases. *See generally* R. & R. 4–9, *Rued v. Jayswal*, No. 24-CV-1763 (JRT/TNL) (D. Minn. Nov. 6, 2024) ("R&R in No. 24-CV-1763"). In what follows, the Court assumes familiarity with that discussion.

This action began on August 26, 2024, when the Court received the Complaint. *See* Docket. The Complaint names twelve defendants, listed below with brief descriptions of the relevant allegations against each:

- The Complaint identifies Defendant Natalie Hudson as a "state judicial officer"; the Court takes judicial notice that Hudson is the current chief justice of the Minnesota Supreme Court. *See* Compl. 2.[3] Plaintiffs allege that Chief Justice Hudson improperly relied on perjury from prior child protective services ("CPS") investigations and interfered in certain proceedings involving W.O.R.'s custody. Specifically, they claim she prevented a fraud action, allegedly relevant to

---

[1] In order: (1) *Rued v. Hatcher*, No. 23-CV-2685 (NEB/DJF) (D. Minn.) (filed Aug. 31, 2023); (2) *Rued v. Jayswal*, No. 24-CV-1763 (JRT/TNL) (D. Minn.) (filed May 15, 2024); (3) *Rued v. Jayswal*, No. 24-CV-2437 (JRT/TNL) (D. Minn.) (filed June 24, 2024); (4) *Rued v. Hudson*, No. 24-CV-3409 (JRT/TNL) (D. Minn.) (filed Aug. 26, 2024); and (5) *Rued v. Webber*, No. 24-CV-3662 (JWB/DWF) (D. Minn.) (filed Sept. 16, 2024).

[2] This applies to cases (1)–(4) above. W.O.R. is a named plaintiff in all five cases, though the parties here and in other actions dispute whether the other Rueds can represent him. *See, e.g.*, ECF No. 28 at 8–10; ECF No. 41 at 20–36. Since the Court's recommended resolution relies on a lack of jurisdiction, it need not—so does not—address the issue of W.O.R.'s representation.

[3] The Court may take judicial notice of readily ascertainable facts. *See, e.g.*, Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

3

W.O.R.'s custody, from proceeding in Hennepin County District Court. *See id.* at 8–10.

- Plaintiffs identify Defendant Leonardo Castro as a "state judicial officer," and the Court takes judicial notice that he is a district-court judge for Minnesota's Second Judicial District in Ramsey County. *Id.* at 4. Plaintiffs allege that Judge Castro incorrectly applied state preclusion principles, including *res judicata*, to avoid addressing certain "unreached federal claims" raised by Plaintiffs in state-court actions. *Id.* at 7–10. They also claim that Judge Castro improperly relied on perjury from prior CPS investigations. *See id.* at 8.

- Plaintiffs name Carrie Lennon as a third "state judicial officer," and the Court takes judicial notice that she is the chief judge of Minnesota's First Judicial District and serves in Scott County. *Id.* at 2. The Complaint's allegations against Judge Lennon largely mirror those against Judge Castro. *See id.* at 7–10.

- Plaintiffs also name Keith Ellison, Minnesota's attorney general, as a defendant. *See id.* at 4. They allege that Ellison committed fraud on various courts by falsely stating in filings that certain of Plaintiffs' claims had already been addressed and/or should not be considered due to state-law preclusion principles. *See id.* at 12. Plaintiffs also name Alec Sloan, an "[a]ssistant Minnesota Attorney General," alleging he engaged in the same practices. *Id.* at 12, 27.

- Other defendants include Catrina Rued, Joseph Rued's ex-wife and W.O.R.'s mother; attorneys Beth Barbosa and Charlie Alden, who represented Catrina Rued in the state-court divorce and custody proceedings; and the law firm Gilbert Alden Barbosa PLLC, where Barbosa and Alden are partners. *See id.* at 27. Plaintiffs allege that each of these defendants knew of perjury in a "CHIPS petition" affecting W.O.R.'s custody but continued submitting documents relying on that perjury to various courts. *See id.* at 12–15; *cf.* R&R in No. 24-CV-1763 at 5–8 (discussing underlying perjury claims).

- Plaintiffs allege that the Hennepin County Clerk of Court improperly failed to file a memorandum of law that Plaintiffs attempted to submit in Hennepin County District Court in July 2024. *See* Compl. 18–19.

- Plaintiffs identify Jamie Pearson as a police officer for the City of Shakopee. *See id.* at 28. They allege that Pearson "failed to make mandatory reports regarding her knowledge . . . of falsified CPS

4

- investigations and other maltreatment and endangerment of W.O.R." *Id.* at 19; *see also id.* at 25 (presenting similar allegation).

- Finally, Plaintiffs identify CornerHouse as a Minnesota-based "child welfare agency acting under color of state law with municipal investigators." *Id.* at 29. Plaintiffs allege that CornerHouse participated in the CPS investigation underlying the "CHIPS petition" mentioned above and incorrectly concluded—allegedly in contradiction with its own internal records—that certain reports of abuse or maltreatment of W.O.R. were false and that W.O.R. may have been coached to make them. *See id.* at 20–22.

For relief, Plaintiffs seek compensatory and punitive damages. *See id.* at 22–23, 25–26. They also request various forms of declaratory relief, including declarations that certain individuals' conduct violated Plaintiffs' constitutional rights. *See id.* at 23–25.

As suggested in the Introduction above, all but one Defendant have moved to dismiss the Complaint.[4] Two motions argue that the Court lacks jurisdiction under the so-called *Rooker–Feldman* doctrine. *See, e.g.*, ECF No. 12 at 8–10; ECF No. 70 at 10–13.[5] Plaintiffs have responded to this argument. *See, e.g.*, ECF No. 33 at 3–4, 11, 35, 38–39.[6] Additionally, several Defendants have requested sanctions against Plaintiffs. *See, e.g.*,

---

[4] The exception is the Hennepin County Clerk of Court, who has not appeared in this action. *See generally* Docket. On September 12, 2024, Joseph Rued filed a certificate of service indicating that he had caused the Complaint to be "delivered to . . . the Chief Executive Officer of the Hennepin County District Court Clerk of Court." ECF No. 6 at 1. This wording suggests that Rued himself handled the delivery, which raises questions about proper service. *Cf.* Fed. R. Civ. P. 4(c)(2) (stating that service must be made by "[a]ny person who is at least 18 years old and *not a party*" (emphasis added)). However, given the jurisdictional resolution suggested in what follows, the Court need not further address this Defendant's lack of response.

[5] Although some Defendants have not raised *Rooker–Feldman* concerns, the Court may still apply the doctrine to claims against those parties. *Rooker–Feldman* affects a court's jurisdiction, and courts must address jurisdictional issues *sua sponte*. *See, e.g.*, *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024) (quoting *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019)); *InterRad Med., Inc. v. Aquilant Ltd.*, No. 23-CV-3709 (ECT/DTS), 2024 WL 913343, at *3 (D. Minn. Mar. 4, 2024) (citing *Fort Bend Cnty.*).

[6] The Court notes that Plaintiffs addressed *Rooker–Feldman* arguments in ECF No. 12 through their filing at ECF No. 33 but have not responded to Defendant Pearson's *Rooker–Feldman* argument in ECF No. 70. Nevertheless, the Court will resolve the *Rooker–Feldman* issue now for two reasons. First, Pearson filed a motion for sanctions alongside her motion to dismiss. Plaintiffs responded to the sanctions motion but not the dismissal motion, leaving their intentions regarding the latter unclear. Second, the Court is well-versed in Plaintiffs' objections to applying *Rooker–Feldman* to Plaintiffs' various matters, and is confident that any response to Pearson's motion would not present new arguments significant enough to alter the analysis.

ECF No. 12 at 15–20; ECF No. 47 at 10–12; ECF No. 76 at 1–8. Plaintiffs have also addressed these requests. *See, e.g.*, ECF No. 33 at 34–37; ECF No. 83 at 10; ECF No. 94 at 1–2. The Court thus finds these issues ready for resolution.

## II.  ANALYSIS

### A.  Reassignment Motion

When Plaintiffs filed this action, this District's Clerk of Court assigned it to U.S. District Judge Eric C. Tostrud and U.S. Magistrate Judge John F. Docherty. *See* Docket. On September 23, 2024, Plaintiffs filed the Reassignment Motion, requesting reassignment to this Court and U.S. District Judge John R. Tunheim, partly due to this Court's and Judge Tunheim's assignment to *Rued v. Jayswal*, No. 24-CV-1763, and *Rued v. Jayswal*, No. 24-CV-2437. *See* ECF No. 17 at 1; ECF No. 19 at 1–2.

On September 25, 2024, Judge Tostrud and Judge Tunheim entered an order reassigning this case to this Court and Judge Tunheim. *See* ECF No. 23. The relief sought by the Reassignment Motion has thus already been granted, so the Court denies the Reassignment Motion as moot.

### B.  *Rooker–Feldman*

This Court's prior order in *Rued v. Jayswal*, No. 24-CV-1763, also addressed *Rooker–Feldman* issues, and that discussion fully applies here.

> The *Rooker–Feldman* doctrine establishes a jurisdictional rule preventing federal district courts from acting as appellate reviewers of state-court judgments. The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The doctrine aims

6

to preserve the U.S. Supreme Court's exclusive appellate jurisdiction over state-court decisions.

If litigants could bypass *Rooker–Feldman* by challenging a state-court judgment under a different label, the doctrine would be toothless.  Thus, "[t]he doctrine precludes district courts from obtaining jurisdiction both over the rare case styled as a direct appeal . . . as well as more common claims which are 'inextricably intertwined' with state court decisions."  Conversely, if a plaintiff asserts "independent claims arising from conduct in underlying state proceedings," then *Rooker–Feldman* generally does not bar jurisdiction.

The key question, then, is how to differentiate between claims that are inextricably intertwined with state-court decisions and those that are independent.  Claims are "inextricably intertwined" if they are so closely related to a prior state-court judgment that a federal ruling would effectively overturn the state decision.  Put differently, a claim is inextricably intertwined with a state-court ruling if it "'can succeed only to the extent the state court wrongly decided the issues before it.'"  Additionally, courts assess the source of a plaintiff's alleged injury when applying *Rooker–Feldman*.  As the Supreme Court highlighted in [*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)], *Rooker–Feldman* applies when a plaintiff complains of "injuries *caused by* state-court judgments."

These standards, and review of the relief the Complaint seeks, plainly show that *Rooker–Feldman* strips this Court of jurisdiction here.  To be sure, Plaintiffs do not pose the challenge here as a direct appeal of any state-court decisions (in the [state-court divorce action] or otherwise).  But there is simply no plausible way to construe Plaintiffs' battery of relief requests in this action without seeing them as a full-bore challenge to (1) the custody-related aspects of the [state-court divorce action] and/or (2) the numerous state- and federal-court decisions that themselves refuse to revisit or overrule the [d]ivorce [a]ction's final result.  The Court certainly understands Plaintiffs' frustration: ultimately, they vehemently disagree with evidentiary rulings . . . that arguably led to a custody outcome that they find abhorrent.  Critically, however, Plaintiffs were able to challenge those rulings in the [d]ivorce [a]ction itself and simply failed to prevail.  And then, of course,

7

> they have repeatedly tried—but failed—to persuade other state- and federal-court judges that the Minnesota Court of Appeals's judgment in the [d]ivorce [a]ction does not tie other tribunals' hands (either because of preclusion principles or jurisdictional consequences). This action is just another manifestation of Plaintiffs' long-running attempt to undercut the [d]ivorce [a]ction's determination concerning W.O.R.'s custody. Its claims are plainly inextricably intertwined with that proceeding's ruling.

R&R in No. 24-CV-1763 at 12–15 (citations omitted).

The same logic applies here. The Court cannot grant any of the relief that Plaintiffs seek here without at least implicitly concluding that Minnesota's state courts mishandled the proceedings determining W.O.R.'s custody. Therefore, *Rooker–Feldman* appears to strip this Court of jurisdiction over this action.

Plaintiffs argue that *Rooker–Feldman* does not apply here—indeed, they claim it is so clearly inapplicable that anyone who disagrees must be acting in bad faith. *See, e.g.*, ECF No. 33 at 4, 11. But their arguments here mirror those in No. 24-CV-1763, and this Court's prior discussion of those arguments also applies fully here:

> Plaintiffs offer several arguments for why *Rooker–Feldman* does not apply, but none succeed. First, they argue that this action presents "independent claims" that bypass the *Rooker–Feldman* bar. Specifically, they assert that their "primary claim, *which all of Plaintiffs' claims fundamentally relate to*, is that [Defendant] Jayswal fraudulently concluded CPS investigations regarding W.O.R. in an under-oath [CHIPS petition] utilized to deprive Plaintiffs' protected rights." But the only way this claim can succeed is if Plaintiffs show that the [d]ivorce [a]ction improperly refused to consider the Jayswal-related evidence that Joseph Rued wanted to introduce there. So this "primary claim" is not at all independent of the [d]ivorce [a]ction.

>     Second, Plaintiffs contend that *Rooker–Feldman* does not apply because (1) the doctrine applies only when state-court proceedings are complete, and (2) they still have custody-related challenges pending in Minnesota state court. The Supreme Court indeed limits *Rooker–Feldman* to cases where plaintiffs complain about "state-court judgments rendered before the district court proceedings commenced." The problem with Plaintiffs' argument, however, is that the Minnesota Court of Appeals's entered judgment in the [d]ivorce [a]ction on November 17, 2022—well before this action began. Therefore, Plaintiffs are indeed challenging a state-court judgment entered before this action started.
>
>     Plaintiffs' apparent counterargument is that some of the collateral actions they have filed in state court remain ongoing. In other words, they suggest a sort of tolling principle: for *Rooker–Feldman* to apply, the district-court proceeding must arise not just after entry of the judgment being challenged, but also after courts entertain any related collateral challenges to the judgment. Plaintiffs cite no authority for this tolling principle, and this Court is aware of none. Indeed, this case illustrates the obvious practical problem such a rule would create: under it, one could sidestep *Rooker–Feldman* simply by filing repeated new cases, as Plaintiffs have done.
>
>     Finally, Plaintiffs argue that *Rooker–Feldman* does not apply because their claims about Defendants' unconstitutional conduct are somehow "unreached." Respectfully, this is incorrect. Plaintiffs had an opportunity to persuade Minnesota's courts—including its appellate courts—of their bedrock claim that certain evidence about Jayswal's alleged conduct should have been handled differently in the [d]ivorce [a]ction. They failed to do so. The refusal of other courts to overturn the [d]ivorce [a]ction's outcome due to jurisdictional or preclusion principles does not mean Plaintiffs' claims went unaddressed; it means that they were considered and the arguments were found insufficient.

R&R in No. 24-CV-1763 at 15–17 (citations omitted) (certain brackets in original).

For these reasons, the Court recommends dismissing this action without prejudice for lack of jurisdiction under the *Rooker–Feldman* doctrine. Given this, the Court

9

recommends granting ECF No. 10 and ECF No. 69 to the extent that they argue that *Rooker–Feldman* applies, but otherwise denying it as moot (with one qualification noted below). Due to the jurisdictional conclusion, the Court also recommends denying most of the other pending motions as moot.

### C.     Filing Restriction

Two motions to dismiss request that the Court impose a filing restriction on Plaintiffs, as does a standalone sanctions motion. *See* ECF No. 12 at 19 (seeking a restriction preventing Plaintiffs "from prosecuting any action or claim, in any United States District Court within the Eighth Circuit Court of Appeals, arising from or related to Joseph Rued's family court action or subsequent related litigation, without prior written authorization from a judicial officer of the District of Minnesota, or unless the pleading is signed by an attorney admitted to practice in this District"); ECF No. 47 at 2 (making a similar request); ECF No. 76 at 9 (same).

Federal courts have inherent authority to manage their proceedings, including the ability to impose sanctions to protect the judicial process from abuse. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–08 (2017) (citing cases); *Fiorito v. Southwick*, No. 22-CV-2128 (PJS/TNL), 2023 WL 2918018, at *5 (D. Minn. Apr. 12, 2023) (same). Additionally, the All Writs Act, 28 U.S.C. § 1651(a), permits courts to issue orders to prevent frustration of their jurisdiction, including enjoining vexatious litigants from filing frivolous lawsuits. *See, e.g.*, *Fleming v. Wells Fargo Home Mortg.*, No. 15-CV-2683 (PJS/HB), 2015 WL 5158707, at *5 (D. Minn. Sept. 2, 2015) (citing cases); *Westley v.*

*Bryant*, No. 14-CV-5002 (PJS/BRT), 2015 WL 2242161, at *10 (D. Minn. May 12, 2015) (collecting cases).

When deciding whether to impose a filing restriction, courts consider four factors:

> "(1) the party's history of litigation, particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had an objectively good faith basis for pursuing the litigation; (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties."

*Fed. Nat'l Mortg. Ass'n v. Mashak*, No. 22-CV-3117 (KMM/DJF), 2023 WL 4622507, at *6 (D. Minn. July 19, 2023) (quoting *Westley*, 2015 WL 2242161, at *10); *see also, e.g.*, *Mendez v. Kallis*, No. 21-1147 (PJS/BRT), 2021 WL 3476681, at *5 (D. Minn. May 27, 2021) (same), *report and recommendation adopted in relevant part*, 2021 WL 2911171 (D. Minn. July 12, 2021), *aff'd*, No. 21-2667, 2021 WL 6689158 (8th Cir. Aug. 16, 2021).

There is no doubt that Plaintiffs have an extensive history of filing lawsuits aimed at challenging Minnesota courts' handling of W.O.R.'s custody. This pattern led a Minnesota district court to designate Joseph Rued as a frivolous litigant—a finding later upheld by the Minnesota Court of Appeals. *See Rued v. Rued*, No. A23-1444, 2024 WL 1987171, at *2 (Minn. Ct. App. Apr. 29, 2024), *review denied* (Aug. 6, 2024).[7] And while that

---

[7] It is worth here reciting the Court of Appeals's related discussion:

> the district court did not abuse its discretion when it imposed sanctions against father, including a security and preconditions, pursuant to its frivolous-litigant determination. The factors are supported by its conclusions and the record: (1) father has pursued endless litigation in this matter and the district court has made hundreds of findings that demonstrate father's arguments have no chance of success; (2) father repeatedly relitigates issues that are already decided; (3) father acts in bad faith by using litigation to harass mother; (4) the district court has repeatedly awarded mother conduct- and need-based attorney fees, demonstrating the injury she incurs because of father's endless litigation; (5) the district court

11

finding addressed Rued's conduct in state court, Plaintiffs' actions in federal court follow a similar pattern: of the five federal lawsuits related to W.O.R.'s custody, four have been dismissed (with the fifth being this action).

Plaintiffs may believe they have a good-faith basis for this litigation. But that addresses only their subjective belief, and the relevant question here is whether their conduct has an objective good-faith basis. The Court concludes it does not. Plaintiffs have been repeatedly informed—by both Minnesota and federal judges—that their suits cannot proceed, yet they continually disregard these warnings. At this stage, Plaintiffs' conduct is objectively unreasonable.

The third and fourth factors also support imposing a filing restriction here. A review of the dockets in Plaintiffs' various cases reveals the significant burden they have placed on those who oppose their views about W.O.R.'s custody. The Court is confident that, without a filing restriction, Plaintiffs will continue generating new federal litigation driven by their dissatisfaction with W.O.R.'s current custody status.[8]

---

identified a dozen instances in which a court has reprimanded or discouraged father from continuing to pursue this litigation, and yet he continues; (6) we can infer that the district court found that sanctions and a security would help filter some of father's frivolous litigation and provide some safeguards for mother, including some assurance of receiving attorney fees; and (7) given the extensive findings and record in this case, it does not appear that any less severe options would provide sufficient protections. Because the district court considered all the factors before it imposed sanctions upon father pursuant to its frivolous-litigant determination, the district court did not abuse its discretion.

*Rued*, 2024 WL 1987171, at *2.

[8] Some courts have refrained from imposing a filing restriction when the litigant had not yet received a specific warning that further conduct could lead to such a restriction. *See, e.g.*, *Jackson v. Schnell*, No. 22-CV-0965 (WMW/JFD), 2022 WL 17418038, at *5 (D. Minn. Aug. 19, 2022), *report and recommendation adopted*, 2022 WL 17091170 (D. Minn. Nov. 21, 2022). But a warning is not always required; other courts have determined that, under certain circumstances, "a warning seems superfluous" and then proceeded with a filing restriction. *Glover v. Hochschild*, No. 23-CV-0119 (PAM/DLM), 2023 WL 4828135, at *4 (D. Minn. July 27, 2023) (citing *Bethune v. Minnesota*, No. 21-CV-2673 (PJS/ECW), 2021 WL 5964540, at *2 (D. Minn. Dec. 16, 2021)). Given Plaintiffs' litigation history and prior

The Court thus recommends imposing a filing restriction on Plaintiffs Joseph Rued, Scott Daryll Rued, and Leah Jean Rued.[9] Going forward, the Court suggests that these Plaintiffs[10] be restricted from filing any litigation in this District related to Joseph Rued's divorce or W.O.R.'s custody unless Plaintiffs are represented by counsel or receive permission from a judicial officer of this District. This restriction will not prevent these Plaintiffs from filing other nonfrivolous litigation on unrelated topics, but it will halt (or at least slow) their efforts to challenge W.O.R.'s custody in this District's courts.[11]

For these reasons, the Court recommends granting ECF Nos. 10, 46, and 75 insofar as they request the imposition of a filing restriction consistent with the Court's discussion above.

### D. Monetary Sanction

Finally, certain Defendants request that the Court impose a monetary sanction on Plaintiffs under 28 U.S.C. § 1927. *See* ECF No. 12 at 20. Under § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory

---

warnings from other courts, this Court concludes that no additional warning is needed before imposing a filing restriction on Plaintiffs.

[9] Most of the conduct at issue here may originate with Joseph Rued rather than the other Plaintiffs. (Indeed, the Minnesota Court of Appeals's discussion appears to focus specifically on Joseph Rued, not his parents.) But Rued's parents have joined him in much of his federal litigation, and the Court suspects that a filing restriction applying solely to Joseph Rued would likely lead to similar litigation filed by his parents instead.

[10] As noted above (*see* note 2), there is a dispute in this and other cases about whether Joseph Rued or his parents can represent W.O.R. Since the Court recommends dismissing this action under the *Rooker–Feldman* doctrine, it does not address the representation issue here. However, to the extent it matters, the Court clarifies that its proposed filing restriction only applies to Joseph Rued and his parents. W.O.R. is not responsible for the litigation actions of his father or grandparents, and the Court emphasizes that nothing in this Order and Report and Recommendation is intended to criticize or condemn W.O.R. in any way. However, if Joseph Rued or his parents try to leverage the carveout here by simply bringing new suits in W.O.R.'s name, the relevant judge will almost certainly take swift action to prevent such tactics.

[11] Certain Defendants request a filing restriction extending to all Districts within the Eighth Circuit. *See* ECF No. 12 at 19; ECF No. 76 at 9. At this stage, the Court does not find such a broad restriction necessary, particularly since any W.O.R.-related action filed by Plaintiffs in other districts would likely be transferred back to this one. If this prediction proves incorrect, however, a future court may choose to expand any filing restriction on Plaintiffs.

thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Court recommends denying the request for monetary sanctions on Plaintiffs at this time, for two main reasons.  First, it is unclear whether § 1927 applies to nonlawyer *pro se* litigants like Plaintiffs.  There is a circuit split on this issue, and the Eighth Circuit has not yet addressed it.  *See, e.g.*, *Erickson v. Sawyer*, 650 F. Supp. 3d 758, 771 (D. Minn. 2023) (citing *Roberts v. Next Generation, LLC*, 853 F. App'x 235, 245 (10th Cir. 2021)).[12]

Second, and more importantly, the Court suspects—"hopes" is perhaps the better word—that the recommended filing restriction will prevent further repetitive litigation from Plaintiffs, at least in federal court.  This restriction should enable the Court to efficiently address any future cases Plaintiffs file regarding W.O.R.'s custody without burdening named defendants with litigation-related hurdles.  If this optimism proves misplaced, however, the question of imposing a monetary sanction on Joseph Rued and his parents may arise again.

### III.   ORDER

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Reassignment of Related Cases

---

[12] Defendant Pearson's motion for sanctions relies on Rule 11 of the Federal Rules of Civil Procedure, not § 1927. *See* ECF No. 76 at 1.  Rule 11 sanctions may be imposed on *pro se* litigants. *See, e.g.*, *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987); *Smith v. Ghana Com. Bank, Ltd.*, No. 13-CV-1010 (DWF/JJK), 2013 WL 12074959, at *8 (D. Minn. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 12074961 (D. Minn. Oct. 8, 2013) (citing *Kurkowski*).  The Court thus denies Pearson's request for sanctions for the reasons stated in the next paragraph.

Pursuant to this Court's July 19, 2021 Standing Order to the Judicial Officers Earlier Assigned [ECF No. 17] is **DENIED** as moot.

## IV.     RECOMMENDATION

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Motion to Dismiss Plaintiffs' Complaint and Seek Filing Restrictions filed by Defendants Natalie E. Hudson, Leonardo Castro, Carrie Lennon, Keith Ellison, and Alec Sloan [ECF No. 10 ("State Defendants' Motion to Dismiss")] and Defendant Jamie Pearson's Motion to Dismiss [ECF No. 69] be **GRANTED** to the extent they seek dismissal of this action based on the *Rooker–Feldman* doctrine.

2. The State Defendants' Motion to Dismiss, along with the motion to dismiss filed by Defendants Catrina M. Rued, Beth Wiberg Barbosa, Charlie R. Alden, and Gilbert Alden Barbosa PLLC [ECF No. 46], and Defendant Pearson's Motion for Sanctions [ECF No. 75] be **GRANTED** to the extent they seek a filing restriction consistent with the Court's recommendation above.

3. This action be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

4. The motions at ECF Nos. 10, 46, and 69 be otherwise **DENIED** as moot.

5. The motions at ECF Nos. 25, 32, 39, 51, 53, 81, and 88 be **DENIED** as moot.

6. Plaintiffs Joseph Rued, Scott Daryll Rued, and Leah Jean Rued be prohibited from filing any new cases in the U.S. District Court for the District of Minnesota concerning Joseph Rued's divorce or W.O.R.'s custody unless they obtain prior approval from a judicial officer in this District or are represented by counsel.

7. The Clerk of Court be **ORDERED** to place Plaintiffs Joseph Rued, Scott Daryll Rued, and Leah Jean Rued on this District's restricted-filer list.

Dated: November 22, 2024

*s/Tony N. Leung*

_____
Tony N. Leung
United States Magistrate Judge

*Rued v. Hudson*
Case No. 24-cv-3409 (JRT/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).